**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Starmark Laboratories** | |
| Plaintiff/Counter-Defendant, | |
| v. | Civil Action no. 2:06-CV-04745-JD |
| **Creative Compounds, LLC** | (The Honorable Jan E. DuBois) |
| Defendant/Counter-Plaintiff. | |

### [PROPOSED] ORDER

Creative Compounds, LLC's Motion to Dismiss or Transfer Venue is granted. This case
is dismissed for lack of personal jurisdiction, for lack of venue, and for lack of subject matter
jurisdiction because the plaintiff lacks standing, and because the complaint fails to state a claim
for which relief can be granted.


Dated: _____          _____

                                       Jan E. DuBois, S.J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Starmark Laboratories** | |
| Plaintiff/Counter-Defendant, | |
| v. | Civil Action no. 2:06-CV-04745-JD |
| **Creative Compounds, LLC** | (The Honorable Jan E. DuBois) |
| Defendant/Counter-Plaintiff. | |

**[PROPOSED] ORDER**

    Creative Compounds, LLC's Motion to Dismiss or Transfer Venue is granted in part.  For the convenience of the parties and in the interests of justice, this case is transferred under 28 U.S.C. § 1404(a) to the United States District Court for the Eastern District of Missouri.


Dated: _____          _____
                                                 Jan E. DuBois, S.J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Starmark Laboratories** | |
| Plaintiff/Counter-Defendant, | |
| v. | Civil Action no. 2:06-CV-04745-JD |
| **Creative Compounds, LLC** | (The Honorable Jan E. DuBois) |
| Defendant/Counter-Plaintiff. | |

## DEFENDANT CREATIVE COMPOUNDS, LLC's
## MOTION TO DISMISS OR TRANSFER VENUE

Defendant Creative Compounds, LLC ("Creative") moves the court under Federal Rule of Civil Procedure 12(b)(2) to dismiss this lawsuit for lack of personal jurisdiction over Creative. Creative is a modest company from Missouri that has had virtually no contact with Pennsylvania.

Creative also moves the Court under Federal Rule of Civil Procedure 12(b)(1) to dismiss this lawsuit for lack of subject matter jurisdiction because Plaintiff, Starmark Laboratories ("Starmark"), lacks standing to bring this action. Starmark did not even own the patent-in-suit when Starmark sued Creative for infringement, which is a jurisdictional defect that cannot be cured.

Creative also moves the Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss this lawsuit for failure to state a claim on which relief can be granted. Starmark was incorporated on the day it filed suit, and thus it cannot have suffered injury prior to its existence, which is a requisite element of its tort causes of action.

- 1 -

Creative also moves the Court under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. §§ 1406(a), 1400(b) and 1391(b) to dismiss this lawsuit for improper venue.  This District is an improper venue because nothing connected to the causes of action occurred here.

In the alternative, Creative moves the Court to transfer this lawsuit to the United States District Court for the Eastern District of Missouri under 28 U.S.C. § 1404(a).  Unlike Philadelphia, Missouri is the location of the principal events and witnesses involved.

A brief supporting this motion and proposed orders reflecting the alternative forms of relief requested each accompany this motion.  The motion is further supported by the Declaration of Gary Haynes.


Date:  October 23, 2007                          Respectfully submitted,

*/s/Robert W. Ashbrook Jr.*              */s/Ury Fischer*
Robert W. Ashbrook Jr.                   Ury Fischer
  Dechert LLP                              Lott & Friedland, P.A.
  Cira Centre, 2929 Arch Street            1 East Broward Blvd., Suite 1609
  Philadelphia, PA  19104                  Fort Lauderdale, FL  33301
  tel. (215) 994-2215                      tel. (305) 448-7089
  fax (215) 994-4000                       fax (305) 446-6191
  robert.ashbrook@dechert.com              ufischer@lfiplaw.com

                                         Counsel for Defendant
                                           Creative Compounds, LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Starmark Laboratories** | |
| Plaintiff/Counter-Defendant, | |
| v. | Civil Action no. 2:06-CV-04745-JD |
| **Creative Compounds, LLC.** | (The Honorable Jan E. DuBois) |
| Defendant/Counter-Plaintiff. | |

**DEFENDANT CREATIVE COMPOUNDS, LLC's
MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS OR TRANSFER VENUE**

Defendant Creative Compounds, LLC ("Creative") respectfully submits this memorandum of law in support of its Motion to Dismiss or Transfer Venue.

## I.    INTRODUCTION

Neither party to this lawsuit has much of a connection to Pennsylvania. Defendant Creative is a modest-sized Missouri company that develops and sells ingredients for nutritional supplements. Creative is incorporated in Nevada and maintains its principal place of business in Scott City, Missouri. Plaintiff Starmark Laboratories ("Starmark"), was incorporated in Oregon on the day it filed this lawsuit, has a corporate mailing address in Carson City, Nevada, and maintains its principal place of business in Medley, Florida.

In its Amended Complaint, Starmark accuses Creative of infringing United States Patent No. 7,109,373 (the "Starmark Patent") by making and selling a compound called Dicreatine Malate ("DCM"). Starmark also accuses Creative of unfairly competing with Starmark, and of tortiously interfering with Starmark's business, by filing and prosecuting its own patent, U.S. Patent No. 7,129,273 (the "Creative Patent"), for DCM and by making statements to third parties

- 1 -

regarding the Starmark and Creative Patents.  Finally, Starmark also seeks a declaration that the Creative patent is invalid.  Despite the fact that the Amended Complaint contains causes of action for unfair competition, tortious interference and false advertising, all of Starmark's causes of action stand or fall based on the Court's determination of the patent causes of action.

Creative asserts four bases for dismissal of this lawsuit,  First, there is no personal jurisdiction over Creative in the Eastern District of Pennsylvania.  *See* Fed. R. Civ. P. 12(b)(2).  Creative lacks sufficient contacts with the Eastern District of Pennsylvania to warrant personal jurisdiction over it, either generally or specific to this litigation.

Second, dismissal is necessary because Starmark lacks standing to bring some claims (hence there is no subject matter jurisdiction).  *See* Fed. R. Civ. P. 12(b)(1).  At the time this lawsuit commenced Starmark owned no rights in the Starmark Patent and therefore had no right to sue for its infringement.  Lack of standing is a jurisdictional defect that cannot be cured.

Third, the Court should dismiss this suit because the Eastern District of Pennsylvania is not a proper venue for this lawsuit.  *See* Fed. R. Civ. P. 12(b)(3), 29 U.S.C. § 1406(a);  Creative does not reside or have a regular and established place of business there and the facts giving rise to this complaint did not arise in this District.

Fourth, this suit should be dismissed because Starmark fails to state a claim for which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Starmark was not incorporated until the very same day that this lawsuit commenced, so it cannot have suffered damages for causes of action that, according to Starmark's allegations, would have accrued prior to its existence.

Alternatively, Creative asserts that the convenience of the parties, and the interests of justice, dictate that venue be transferred to the Eastern District of Missouri.  28 U.S.C. § 1404(a).

Creative has made only four sales of DCM in this District, accounting for less than 0.2% of Creative's total overall sales of the accused product. Creative resides in the Eastern District of Missouri and most key witnesses and documents are located there. No key witnesses or documents are located in Pennsylvania. To those witnesses located outside of the Eastern District of Missouri, that forum is more convenient than, or as convenient as, the Eastern District of Pennsylvania.

## II.    FACTUAL BACKGROUND

### A.    Facts Relating to Creative's Business

Creative is a closely-held and managed company located in Scott City, Missouri. Creative limits its business to the development, importation, sale and distribution of raw material ingredients utilized by its clients in the manufacture of nutritional supplements and other health and fitness-related products. The company was incorporated in Nevada in 2002 and has its principal place of business in Scott City. Missouri. Creative has no other offices and maintains no established place of business outside of its Scott City offices. (Declaration of Gary Haynes (hereinafter "Haynes Decl.") ¶¶ 3, 9.) Scott City is located within the Eastern District of Missouri.

Creative has a total of eight (8) employees, all of whom are based at, and work out of, the Scott City, Missouri office. Creative does not have a place of business in Pennsylvania, nor is it registered to do business in Pennsylvania. It has no property in the state. It does not attend trade conferences in the state. It does not currently have, and has never had, any employees or sales representatives in Pennsylvania. (Haynes Decl., ¶¶ 4, 5, 8.)

Creative imports all of the DCM it sells from China. The orders of DCM arrive by ship at the port of Long Beach, California and clear U.S. Customs in St. Louis, Missouri. All DCM sold by Creative is shipped from its location in Scott City, Missouri. Unless an order of DCM is

shipped to a customer in Pennsylvania, the product has absolutely no contact with Pennsylvania. (Haynes Decl., ¶ 11.)

Creative has made only four sales of DCM in Pennsylvania, all of which were made <u>after</u> Starmark sued Creative. These sales were made to two different customers. One customer bought 25 kgs of bulk DCM in a single sale. The second customer bought 350 kgs of bulk DCM in three separate sales. There have been no other sales of DCM in Pennsylvania and Creative currently has no pending orders from customers in Pennsylvania. In comparison, Creative has sold approximately 245,367 kgs of DCM to all customers, including those inside and outside of Pennsylvania. (Haynes Decl., ¶¶12, 13.) Thus, sales of DCM to customers in Pennsylvania account for only approximately 0.153% of total DCM sales by Creative. By all accounts this is a miniscule and negligible amount.

All of Creative's witnesses, including those most involved in development, sales, market strategy, manufacturing and accounting, are based in Missouri. Similarly, Creative's documents related to these subjects are all maintained in Missouri. (Haynes Decl., ¶¶ 14, 15.)

### B. Facts Relating to Starmark

Starmark is an Oregon corporation formed on the same date that the instant lawsuit was initiated. (Attached as Exhibit "B" hereto is a true and correct copy of the Articles of Incorporation of Starmark Laboratories.) As Exhibit "B" shows, Starmark was incorporated on October 23, 2006, the same day the instant action was commenced. In its website, Starmark describes itself as having a "worldwide" presence and boasts that it was "founded by an elite group of supplement industry executives and scientists" and that it is "spearheaded" by Matthias Boldt. (Attached as Exhibit "C" hereto is a true and correct copy of selected pages of Starmark's website, which can be downloaded from the URL: http:\\www.starmarklabs.com.)

Matthias Boldt, the putative inventor of the Starmark Patent, is listed on the patent as being a resident of Oxnard, California.  (Complaint Exh. A.).

Starmark claims that its principal place of business is located in Medley, Florida (Complaint ¶ 4; Amended Complaint ¶ 4.)  However, it also maintains a registered agent in Oregon and has furnished a corporate address in Carson City, Nevada to the Oregon Secretary of State (Exhibit "B" hereto).  The records of the Corporate Division of the Oregon Secretary of State make no mention of the Medley, Florida location or of any location in Pennsylvania. Starmark appears to have no contacts, and has pled no contacts, with Pennsylvania.

In purported support of its business tort and Lanham Act allegations, Starmark attached three letters as exhibits to the Complaint.  The first letter is from Creative and is addressed to Kaizen Nutrition in Gardena, California.  (Complaint Exh. B.)  The second letter is from Creative's counsel located in Washington D.C. and is addressed to Creative in Missouri. (Complaint Exh. C.)  The third, and final letter, is addressed to SAN Corporation in Oxnard, California and was sent by Iovate, in Ontario, Canada.  (Complaint Exh. D.)

### C.   The Amended Complaint and the Starmark Patent

All this begs the question:  whatever led Starmark to choose the Eastern District of Pennsylvania as the venue in which to sue?  The answer, it seems, is that Starmark chose the patent lawyer who prosecuted the Starmark Patent, Attorney Joseph Chovanes, to be the one to file the infringement lawsuit.  Chovanes has his office in Malvern, Pennsylvania, so this district was the most convenient for Attorney Chovanes.

Starmark initiated this action on October 23, 2006.  An Amended Complaint was filed on October 15, 2007.  To date there has been no discovery in this case.

The Amended Complaint alleges infringement of the Starmark Patent by Creative. (Amended Complaint, ¶¶ 14-17, 31-36.)   The Starmark Patent, entitled "Creatine Salts and Method of Making Same," relates to a compound characterized by having two molecules of creatine in chemical bond with an anion of a dicarboxylic acid as well as a process for making the compound.   The Starmark Patent came from patent application 10/740,263 (the "'263 Application") which putative inventor Matthias Boldt filed on December 18, 2003.   (See Amended Complaint, Exhibit "A", title page).   The Complaint identifies a Creative product known by the trademark "2CM" as the product accused of infringement.   (*Id.*)   In the Amended Complaint, Starmark does not allege any facts related to jurisdiction or venue apart from perfunctory allegations that 2CM is sold by Creative in this judicial district (Amended Complaint ¶ 14) and that Creative "conducts significant business activities in this district and is selling [and marketing] the infringing product in this district" (Amended Complaint ¶¶ 3, 5.)

Although the original Complaint in this lawsuit alleged that Starmark was "the owner by assignment of all right, title and interest in and to" the Starmark Patent, this allegation was false. As the Amended Complaint admits, Starmark's purported ownership in the Patent did not come into being until November 2006. (Amended Complaint, ¶ 7).

The United States Patent and Trademark Office ("USPTO") records assignments of patent applications and issued patents, similar to the way real property deeds are recorded. Attached as Exhibit "A" hereto are true and accurate copies of the assignment records for the Starmark Patent maintained by the USPTO.   As these records show, upon filing the '263 Application, Mr. Boldt assigned "the entire right, title and interest" in the application to SAN Corporation.   On November 28, 2006, more than one month <u>after</u> this lawsuit was initiated, SAN Corporation assigned its rights in and to the Starmark Patent to Starmark.   Accordingly, on

October 23, 2006, the date this lawsuit was commenced, Starmark did not own any rights to the Starmark Patent.

III.   **THIS SUIT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.**

    A.   **Legal Standard**

In order to determine whether it may exercise personal jurisdiction over an out of state defendant[1], the Court must determine: (1) whether the state long-arm statute permits assertion of jurisdiction; and (2) whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice" under *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *3D Sys. v. Aarotech Labs., Inc.,* 160 F.3d 1373 (Fed. Cir. 1998)

In analyzing the issue of personal jurisdiction over a defendant accused of patent infringement, a district court must apply the law of the Federal Circuit rather than that of the regional circuit in which the case arises. *Davlyn Mfg. Co., Inc. v. H&M Auto Parts, Inc.*, 414 F. Supp.2d 523, 527 (E.D. Pa. 2005) *citing Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed. Cir.), *cert. denied*, 515 U.S. 1122 (1995). A district court may assert personal jurisdiction over a non-resident to the extent allowed by the law of the state in which it sits, consistent with the requirements of due process. *Commissariat A L'Energie Atomique v. Chi Mei Optoelectonics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b). Due process requires that the defendant have "minimum contacts" with the forum state, and that the exercise of

---

[1] Starmark admits that Creative is a Nevada corporation.  *See* Complaint at ¶ 5.

jurisdiction comports with "traditional notions of fair play and substantial justice." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1374-75 (Fed. Cir. 2000) (*quoting Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

A court may exercise personal jurisdiction based on a defendant's general or specific contacts with the forum. General jurisdiction is based upon the defendant's "continuous and systematic contacts" with the forum. *Id.* (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-416, (1984)). Specific jurisdiction is appropriate only if the Federal Circuit's three-prong test is met: "(1) the defendant 'purposefully directed' its activities at residents of the forum state; (2) the claim arises out of or relates to those activities; and (3) the exercise of personal jurisdiction would be reasonable and fair." *Davlyn Mfg. Co., Inc.*, 414 F. Supp. 2d at 528 *quoting 3D Sys.*, 160 F.3d at 1378.

Both the Complaint and the Amended Complaint are devoid of allegations of continuous or systematic contacts between Creative and Pennsylvania. It is clear that the facts of this case do not support an assertion of general jurisdiction over Creative. Creative is not incorporated in Pennsylvania, has no offices or facilities in Pennsylvania, is not licensed to do business in Pennsylvania, nor owns property in the state. (Haynes Decl., ¶¶ 3-8.) Accordingly, if this Court has personal jurisdiction over Creative, it is on the basis of specific, not general jurisdiction.

In deciding a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of proving, through affidavits, or competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. *Dodge-Regupol, Inc. v. Primary Acoustics LLC*, No. 06-cv-5074, 2007 U.S. Dist. LEXIS 63415, at *9; 2007 WL 2463373, at *4 (E.D. Pa. 2007) (Baylson, J.).

**B.** **Creative Has Not Purposefully Directed Contacts at Pennsylvania.**

Creative does not maintain any regular or established places of business in Pennsylvania. Creative does not direct any advertisements at citizens of Pennsylvania and maintains no representatives or other employees in Pennsylvania. Creative does not have a telephone listing in any telephone directory in Pennsylvania. Creative does not regularly attend trade conferences in Pennsylvania (Haynes Decl., ¶¶ 3-8.) To the extent Creative has transacted any business with residents of Pennsylvania it has been sporadic and not pursuant to any concerted effort to attract business from residents of Pennsylvania. Creative has made no efforts to direct its business contacts at the State of Pennsylvania. Thus, the first prong of the Federal Circuit's three-prong test for specific jurisdiction fails.

**C.** **The Instant Action Does Not Arise Out of Creative's Activities in Pennsylvania.**

Creative has only made four sales of the accused product, DCM, to residents of Pennsylvania. (Haynes Decl., ¶ 12.) Those sales account for less that 0.2% of all sales of DCM. (Haynes Decl., ¶¶ 12-13.) Moreover, they were each made after this lawsuit was filed, and therefore could not constitute a basis for this Court's personal jurisdiction over Creative. Creative has no pending orders for DCM from any residents of Pennsylvania. (Haynes Decl., ¶¶ 12-13.) Creative does not import DCM through Pennsylvania and, except for the very limited amount mentioned above, does not ship DCM to, from or through Pennsylvania. (Haynes Decl., ¶¶ 11.) None of the alleged instances of "false advertising" attributed by Starmark to Creative bear any relation to the State of Pennsylvania. Creative did not send any of the communications attached to the Complaint or Amended Complaint from or to Pennsylvania. Starmark does not allege any specific communications between Creative and residents of Pennsylvania. Starmark

does not specifically allege that Creative interfered with any of its prospective commercial relations in the State of Pennsylvania much less provide any evidence of such interference.

In sum, there is no evidence that this lawsuit arises out any activity of Creative within the State of Pennsylvania.  It appears that the only reason this lawsuit was brought in Pennsylvania was because that is where Starmark's original litigation counsel resides.  The second prong of the Federal Circuit's for specific jurisdiction, like the first, fails.

**D.      The Exercise of Jurisdiction over Creative by this Court is Not Reasonable or Fair.**

It would defeat any notion of fair play and substantial justice to submit Creative, a Nevada corporation that operates almost entirely out of its Missouri offices, with no links or interests in Pennsylvania, to personal jurisdiction in this state.

In deciding the reasonableness of exercising jurisdiction over Creative, this Court may consider factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest in the several states in furthering fundamental substantive social policies. *Dodge-Regupol, Inc.,* 2007 U.S. Dist. LEXIS 63415, at *13; 2007 WL 2463373, at *5 *citing Elecs. for Imaging, Inc.*, 340 F.3d at 1352.

Litigating a patent case in Pennsylvania places a tremendous burden on an eight-employee Missouri corporation with no presence in this state.  Moreover, given the dearth of contacts between either party, or the subject matter of this controversy, and Pennsylvania, this state has almost no interest in resolving this controversy.  Therefore, maintaining this lawsuit in Pennsylvania would not comport with fair play and substantial justice.  Therefore, the final prong of the Federal Circuit's test for specific jurisdiction also fails.

Having failed all requirements for general and specific jurisdiction over Creative, the Court should find that there is no personal jurisdiction over Creative in this District and dismiss this suit on that basis.

**IV.    THE PATENT INFRINGMENT CLAIM SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**

   **A.  Legal Standard**

It is hornbook law that a plaintiff must have Article III standing in order to bring a lawsuit. *See, e.g.*, *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005); *Paradise Creations, Inc. v. U.V. Sales, Inc.*, 315 F.3d 1304, 1309-10 (Fed. Cir. 2003); *Gaia Techs., Inc. v. Reconversion Techs., Inc.* 93 F.3d 774, 780 (Fed. Cir. 1996), *amended on other grounds*, 104 F.3d 1296 (Fed. Cir. 1996). For its patent infringement cause of action, Starmark lacks standing because it did not own the Starmark Patent at the time it sued Creative for its purported infringement. As discussed below, Starmark cannot cure this fatal jurisdictional defect, and the Court should therefore dismiss the patent infringement claim for lack of subject matter jurisdiction.

   **B.  Starmark Lacks Standing Because It Had No Rights in the Starmark Patent Upon Commencement of this Lawsuit**

In order to have standing to bring a claim for patent infringement, the party alleging infringement must own the patent-in-suit or be an exclusive licensee which holds all substantial rights in the patent. See *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002) ("In order to have standing, the plaintiff in an action for patent infringement must be a 'patentee' pursuant to 35 U.S.C. §§ 100(d) & 281, or a licensee who holds 'all substantial rights' in the patent [i.e., an exclusive licensee]"). Courts have not hesitated to dismiss claims of patent infringement when the plaintiff lacks such standing. See, e.g., *Lans v. Digital Equip. Co.*, 252

- 11 -

F.3d 1320, 1328 (Fed. Cir 2001) ("If a party lacks title to a patent, that party 'has no standing to bring an infringement action' under the patent.") (quoting *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1571 (Fed. Cir. 1991)); *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1988) ("[A] suit for infringement must ordinarily be brought by a party holding legal title to the patent."); *Gaia Techs.*, 93 F.3d at 777-80, *amended on other grounds*, 104 F.3d 1296 (dismissing infringement claims because the plaintiff lacked standing to bring suit on patents it did not own).

In this case, contrary to what Starmark plead in its Complaint, the Starmark Patent was not owned by Starmark when this lawsuit was commenced.  See Complaint at ¶ 8 (incorrectly claiming that the Starmark Patent was owned through assignment by Starmark).  The USPTO's records show that the putative inventors assigned the patent application giving rise to the Starmark Patent to SAN Corporation on December 18, 2003 10, 2000. See Exhibit "A" hereto. There are no other recorded assignments for the Starmark Patent until November 28, 2006, one month <u>after</u> Starmark filed the instant lawsuit.

Thus, this lawsuit was filed by a plaintiff, Starmark, that did not own the patent on which the suit is based.  Nor has Starmark provided any evidence—or even alleged—that it was at the time an exclusive licensee of the Starmark Patent.  *See, e.g., Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189-94 (Fed. Cir. 2007) (holding that a non-exclusive licensee lacked standing to sue for infringement); *Schreiber Foods*, 402 F.3d at 1202-03 ("It is well-settled that non-exclusive licenses do not have constitutional standing to sue.").  It was, in fact, impossible for Starmark to be an exclusive licensee of the Starmark Patent prior to filing suit since Starmark did not even exist until the day it sued Creative.

Starmark was not the owner or exclusive licensee of the Starmark Patent at the time it sued Creative and therefore lacks standing to sue for infringement.  Accordingly, this Court lacks subject matter jurisdiction, and the case must be dismissed.

### C.   It is Not Possible for Starmark to Cure its Lack of Standing

A patent infringement plaintiff with no enforceable rights in the patent is not allowed to cure its lack of standing after the filing of suit. *See Paradise Creations*, 315 F.3d at 1309-10 ("Such a defect in standing cannot be cured after the inception of the lawsuit."); *Propat*, 473 F.3d at 1193-94 (refusing to allow non-exclusive licensee to cure lack of standing by joining patent owner); *Enzo*, 134 F.3d at 1092-93 (holding that plaintiff could not cure lack of standing through a retroactive exclusive license); *Gaia Techs.*, 93 F.3d at 779-80 (Fed. Cir. 1996), *amended on other grounds*, 104 F.3d 1296 (Fed. Cir. 1996) (holding that plaintiff could not cure lack of standing through a retroactive assignment of the patent-in-suit). As the Federal Circuit has stated, "In the area of patent infringement, … if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing, nor by the subsequent purchase of an interest in the patent in suit." *Schreiber Foods*, 402 F.2d at 1203.  Since Starmark lacked standing at the time it filed its complaint, this deficiency cannot be cured, and the Court should dismiss this lawsuit.

Similarly, with regard to Starmark's lack of standing due to its non-existence until the day it filed this lawsuit, there are no corrective measures that Starmark can take to cure this fatal defect.  Starmark cannot go back in time to perfect its standing and no additional allegations or amendments to the pleadings in this case can change that fact

## V.   THIS SUIT SHOULD BE DISMISSED FOR IMPROPER VENUE UNDER 28 U.S.C. §§ 1406(A), 1400(b) and 1391(b).

### A.   Venue for the Patent Causes of Action is Improper under 28 U.S.C. § 1400(b).

Venue in a patent infringement action is controlled by 28 U.S.C. § 1400(b), which provides: "any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business" (emphasis added).  In actions that involve a corporate defendant, 28 U.S.C. § 1391(c) defines residency for the purposes of venue: "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  As argued above, based on the very limited contacts between Creative and the Eastern District of Pennsylvania, Creative is not, and was not at the time this action commenced, subject to personal jurisdiction in this district.  Therefore, for purposes of 28 U.S.C. § 1400(b), Creative is not a resident of the Eastern District of Pennsylvania.

As attested by the declaration of Gary Haynes, Creative also do does not maintain an established place of business In the Eastern District of Pennsylvania. (Haynes Decl., ¶ 5.) Therefore, this action fails to meet either basis for establishing venue in the Eastern District of Pennsylvania.

### B.   Venue for the Non-Patent Causes of Action Is Improper under 28 U.S.C. § 1391(b)[2].

28 U.S.C. § 1391(b) provides that a civil action may only be brought in: "(1) a judicial district where any defendant resides … (2) a judicial district in which a substantial part of the

---

[2] In the Amended Complaint (at ¶ 3), Starmark states that 28 U.S.C. § 1391(a), not 1391(b) controls venue for the non-patent causes of action in this lawsuit.  This is clearly an error since 1391(a) applies to cases in which diversity it the exclusive basis for jurisdiction and this is a federal question patent case.  This is further confused by the fact that the incorrect subject matter jurisdiction statute was cited in the Amended Complaint (at ¶ 2).  Starmark cited 28 U.S.C. § 1336(a) as controlling subject matter jurisdiction when, in fact 28 U.S.C. § 1338(a) controls.

events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."  As established above in the analysis of venue under 28 U.S.C. § 1400(b), Creative is not a resident in this district.  Also, as discussed at length in the portion of the memorandum dealing with personal jurisdiction, none of the events giving rise to Starmark's claims occurred in this district nor is there any property located within this district that is the subject of this dispute.  In fact, Starmark's claims of false advertising, falsely published information, false claims of inventorship, false notification of potential licensees, and false statements all arise from a single letter which was written in Missouri.  *See* Am. Compl. Ex. C.  Finally, subsection (3) of 28 U.S.C. § 1391(b) is inapplicable here since clearly this action could have been brought in Missouri where Creative resides.  Accordingly, venue under 28 U.S.C. § 1391(b) is also improper for this suit.

From a policy standpoint, although the Amended Complaint contains non-patent causes of action and Starmark has invoked pendant jurisdiction, those causes of action are intimately linked, and in fact depend on, the judicial evaluation of the Creative and Starmark Patents in the context of infringement and declaratory judgment claims.  It would therefore make little sense to only dismiss the patent causes of action while retaining the non-patent causes of action.  The entire lawsuit should be dismissed and all the claims litigated together in a proper venue.

## VI.   THIS SUIT SHOULD BE DISMISSED BECAUSE THE COMPLAINT FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

Starmark did not even exist until the very same day that it filed the instant lawsuit.  Thus, Starmark cannot have suffered damages with regard to the remaining causes of action in the

Amended Complaint which presuppose the existence of an entity having the capacity to be injured.

### A.    <u>Legal Standard</u>

Starmark's remaining causes of action require damages as a prima facie element.  *See, e.g.*, *Tamko Roofing Prods., Inc. v. Smith Eng'g Co.,* 450 F.3d 822, 829 (8th Cir. 2006) (Missouri tortuous interference law); *Intervest, Inv. v. Bloomberg. L.P.*, 340 F.3d 144, 168 n.10 (3d Cir. 2003) (Pennsylvania tortuous interference law).

### B.    <u>Starmark Did Not Exist Until the Day It Filed Suit.</u>

Starmark is an Oregon corporation formed on the same date that the instant lawsuit was initiated.  *Compare* Ex. B (Starmark Articles of Incorporation) *with* Compl.  As Exhibit "B" shows, Starmark was incorporated on October 23, 2006, the same day the instant action was commenced.  The Court may take judicial notice of this public document.  Fed. R. Evid. 210(b).

Starmark alleges in Count III of the Amended Complaint that it "has been, and will continue to be injured in its commercial interests, business and property as a result of Creative's statements" and that "Starmark has suffered damages in an amount not yet ascertained." (Amended Complaint, ¶¶ 50-51).  Starmark did not exist prior to the commencement of this lawsuit and therefore had no "commercial interests, business [or] property" that could be injured. Starmark could not have suffered any damages because it did not exist.

In Count IV of the Amended Complaint, Starmark alleges that Creative "made false or misleading statements as to Starmark's products" and that those statements "would cause injury and loss to Starmark as well as damage to Starmark's commercial interests." (Amended Complaint, ¶¶ 58-59).  Starmark further states that Creative "intended to cause injury and loss to Starmark" and that "Starmark has been and will continue to be injured as a result of [Creative's]

statements." (Amended Complaint, ¶¶ 60-61). Again, Starmark did not exist until the day this lawsuit was commenced and therefore had no products to make misleading statements about or commercial interests to damage. None of the attachments to the complaint ever mention Starmark. It was impossible for Creative to have the pled intent to injure Starmark when Starmark did not even exist and was not known to Creative.

Finally, In Count VI of the Amended Complaint, Starmark alleges that Creative "purposefully and with the intent to harm Starmark has sold its competing 2CM product to potential and existing buyers of Starmark's [product] and falsely disparaged [Starmark's] product and the validity of [Starmark's patent] thus unlawfully interfering with [Starmark's] abilities to earn revenues, royalties and other fees." The Amended Complaint continues by stating that as a result of Creative's actions "Starmark has sustained actual damages including but not limited to the sales Starmark would have otherwise made to the buyer's of [Creative's] product. As before, these allegations are nonsensical when one considers that the entity alleging these actions did not exist at the time the actions are alleged to have occurred. Starmark did not have any product or patent to disparage, did not have any actual or potential buyers, and could not have made any sales, prior to commencement of this lawsuit.

Common sense dictates that an entity that did not exist at the time it alleges wrongful acts were committed against it has no basis to seek redress for such acts. Yet this is precisely what Starmark seeks here. For this reason, the Court should dismiss this case.

## VII.  ALTERNATIVELY, THIS SUIT SHOULD BE TRANSFERRED TO A MORE CONVENIENT VENUE PURSUANT TO 28 U.S.C. § 1404(a).

### A. Legal Standard

In considering a motion to transfer a civil action to another federal district, the Supreme Court has instructed that §1404(a) is intended to vest the Court with broad discretion to

determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 30-31 (1988).

Starmark's decision to file suit in the Eastern District of Pennsylvania is nothing short of an attempt to impose on Creative the substantial costs involved in litigating a patent case in an inconvenient forum.  Neither of the parties is based in Pennsylvania and to the best of Creative's knowledge, none of the witnesses or relevant documents are there.  There appears to be no explanation for Starmark to have brought this meritless suit in Pennsylvania other than to saddle Creative with additional costs and for the convenience of Starmark's original litigation counsel, Mr. Chovanes.

Creative's own personnel with knowledge relating to development, manufacturing, sales and finances of the accused product are all located in the Eastern District of Missouri.  All of Creative's witnesses and documents relating to same are also in the Eastern District of Missouri or in fora other than Pennsylvania.

Plaintiff also is not based in the Eastern District of Pennsylvania.  It is incorporated in Oregon and has its principal place of business in either Florida, Nevada or California.  None of the third parties referenced in Starmark's non-patent causes of action are located in Pennsylvania.  Starmark is easily capable of pursuing any claims it might have against Creative in the Eastern District of Missouri.

Although Starmark has identified two witnesses who are located in Pennsylvania in its initial disclosures, they are both attorneys and are unlikely to testify at trial.  The first witness is Joseph Chovanes, Starmark's original litigation attorney and the attorney who prosecuted the Starmark Patent on behalf of SAN Corporation.  The second witness is identified as Guy

Donatiello, an attorney for Endo Pharmaceutical Holdings, Inc., who Starmark states has information relating to the disclosure in the Starmark Patent.  In any event if these two individuals will testify in a trial, it is expected that Starmark would have no problem in having them voluntarily travel to appear in the Eastern District of Missouri.

To the best of Creative's knowledge, the relevant Starmark documents and all remaining witnesses are located in California, Florida, Nevada or Oregon, not the Eastern District of Pennsylvania.  Presumably the Starmark witnesses who would testify about its sales and marketing are based in one of those locations. To the extent any of Starmark's witnesses must travel from any of those locations to the Eastern District of Missouri, their travel time will be equal to, or less than, travelling to the Eastern District of Pennsylvania.

Furthermore, perhaps the key witness for Starmark, Matthias Boldt, the putative inventor of the Starmark Patent, is based in Oxnard, California, which is significantly closer and more accessible to the Eastern District of Missouri than to the Eastern District of Pennsylvania.

### B.  The Law of this District Favors a Missouri Forum.

28 U.S.C. §1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This section is intended to vest the Court "with broad discretion" conduct a case by case analysis of various factors to decide whether convenience and fairness call for a transfer of venue.  *Jumara* v. *State Farm Ins. Co.,* 55 F.3d 873, 883 (3d Cir. 1995).  Therefore, the Court's determination to transfer a case will be reversed only for an abuse of discretion. *See Lony v. E.I. DuPont de Nemours & Co.,* 886 F.2d 628, 631-32 (3d Cir. 1989).[3]

---

[3] Although the Federal Circuit is the Court of Appeals to which an appeal in a patent case lies, the law applicable to a motion to transfer is that of the appropriate regional circuit, not the Federal Circuit. *Storage Tech. Corp. v, Cisco Sys.*, 329 F.3d 823, 836 (Fed. Cir. 2003) (*citing Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000)).

Put differently, 28 U.S.C. §1404(a) is intended "to prevent waste of time, money, and energy, and to protect litigants, witnesses, and the public against unnecessary expense and inconvenience." *Van Dusen* v. *Barrack,* 376 U.S. 612, 616 (1964).

The movant is not required to show "truly compelling circumstances for . . . change . . . [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district." *High River P'ship v. Mylan Labs., Inc.,* 353 F. Supp. 2d 487, 492 (M.D. Pa. 2005) (quoting *In Re United States,* 273 F.3d 380, 388 (3d Cir. 2001)).

As a threshold question in any change of venue analysis, the Court must determine whether the action might have been brought in the district proposed by the moving party. *Id.*. If this test is met, the Court must then weigh a list of factors to determine whether transfer is warranted in the interest of fairness and convenience. Although there is no definitive formula, courts generally consider the following factors:

(1)    the plaintiff's choice of forum;

(2)    the defendant's preference;

(3)    where the claim arose;

(4)    the convenience of the parties;

(5)    the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;

(6)    the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum;

(7)    the enforceability of the judgment;

(8)    practical considerations that could make the trial easy, expeditious, or inexpensive;

(9)    the relative court congestion in the competing courts;

- 20 -

(10)    the local interest in deciding local controversies at home;

(11)    the public policies of the fora; and

(12)    the familiarity of the trial judge with the applicable state law.

*Jumara,* 55 F.3d at 879-880.  Finally, in determining whether or not to transfer venue, the Court must consider, in view of the above factors, the three general categories of factors stated in § 1404(a): (1) the convenience of the parties; (2) the convenience  of the witnesses; and (3) whether the transfer would be in the interest of justice. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997), *cert. denied*, 522 U.S. 1029, 118 S. Ct. 629, 139 L. Ed. 2d 609 (1997).

### 1.    The Lawsuit Could Have, and Should Have, Been Brought in Missouri.

As a preliminary matter, the Eastern District of Missouri would have jurisdiction over this action.  Creative is a resident in, and has its principal place of business in Scott City, Missouri.  There is no impediment to Starmark's bringing suit against Creative there.  In fact, as argued above, the Eastern District of Missouri is the <u>only</u> venue in which venue is proper for this lawsuit.

### 2.    The *Jumara* Factors Favor Transfer to the Eastern District of Missouri.

Having satisfied the threshold question, the next step is to analyze the twelve *Jumara* factors to determine whether they favor a transfer of venue:

### (a)    The plaintiff's choice of forum;

The choice of forum of the non-moving party, generally the plaintiff, is "entitled to less weight where the plaintiff chooses a forum which is neither his home nor the situs of the occurrence upon which the suit is based."  *Reed v. Weeks Marine, Inc.,* 166 F. Supp. 2d 1052, 1057 (E.D. Pa. 2001).  When the central facts of a lawsuit occur outside of the forum state, a

plaintiff's selection of that forum is entitled to less deference. *Sandvik AB v. Rockmore Int'l, Inc.*, 2005 U.S.Dist Lexis 31583 (M.D. Pa. 2005) (citing *Saint-Gobain Calmar, Inc. v. National Products Corp*., 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002)).

Here, neither Starmark nor Creative can call the Eastern District of Pennsylvania its "home." Creative is a resident of Missouri and Starmark is ostensibly a resident of Florida. Nor is the Eastern District of Pennsylvania the situs of the occurrence upon which Starmark's lawsuit is based. To the extent any of Creative's sales of DCM infringed the Starmark Patent, all of those sales originated from Missouri and all but a miniscule amount (less than 0.2%) were made to entities outside the Eastern District of Pennsylvania. Any sales within this District were made <u>after</u> the complaint was filed, and so could not have been the basis for venue at the time the complaint was filed. Similarly, all of the allegedly offensive communications giving rise to Starmark's allegations under the Lanham Act and general business torts originated and terminated outside the Eastern District of Pennsylvania. Finally, virtually all of the significant witnesses and documents related to this dispute are located elsewhere.

### (b)     The defendant's preference;

Creative prefers that the case be litigated in the Eastern District of Missouri. While any patent litigation would be a substantial burden for a company of Creative's size, it is better able to abide the costs and rigors of litigation in its home forum.

### (c)     Where the claim arose;

The claim arose principally in Missouri, where Creative receives and from where Creative ships the accused products and from where the allegedly tortious communications originated.

**(d)      The convenience of the parties;**

Missouri is more convenient for Creative, and that forum, as described above, is no less convenient for Starmark, whose operations are based in Oregon, Nevada or Florida.

**(e)      The convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;**

Creative cannot afford to send all of its relevant witnesses to Pennsylvania for trial, or to send company representatives to significant hearings. Thus, Creative is clearly disadvantaged by a Pennsylvania venue. On the other hand, there is no difference in inconvenience for Starmark, who has no connections with the Pennsylvania forum, in sending its witnesses to either jurisdiction. Those witnesses who must travel from California to the forum, including the putative inventor of the Starmark Patent, a key witness, will be less inconvenienced if they have to travel to Missouri, as it is closer to their home forum than Pennsylvania. The two Pennsylvania witnesses identified by Starmark, Attorneys Chovanes and Donatiello, are unlikely to testify at trial as they will likely invoke the attorney-client privilege. If the privilege is waived, these two witnesses will likely be available to testify for Starmark at a trial regardless of whether it took place in Pennsylvania or Missouri.

**(f)      the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum;**

This factor does not favor or disfavor either forum, as most documents and records will probably be produced electronically, or can be and can be physically produced in either situs.

**(g)      The enforceability of the judgment;**

Creative has asserted lack of personal jurisdiction as an affirmative defense. If the Court were to rule that no personal jurisdiction exists over Creative in Pennsylvania, a judgment entered

in Pennsylvania would not be enforceable.  Clearly this problem does not exist if the case is transferred to Missouri.

**(h)      Practical considerations that could make the trial easy, expeditious, or inexpensive;**

Trial would be considerably less expensive in Missouri.  Fewer witnesses would need to travel, fewer counsel would need to travel, and the hourly rates for legal professionals in Missouri are significantly lower than they are in the Eastern District of Pennsylvania.

**(i)      The relative court congestion in the competing courts;**

According to Federal Court Management Statistics, (See http://www.uscourts.gov/fcmstat/index.html), in 2006 there were a total of 1,454 new civil filings per judgeship in the Eastern District of Pennsylvania, this compares with only 307 new civil filings per judgeship in the Eastern District of Missouri.  This indicates that the courts in the Eastern District of Missouri are less congested than those in the Eastern District of Pennsylvania. (Attached as Exhibit "D" hereto are true and correct copies of the 2006 Federal Court Management Statistics for the Eastern District of Pennsylvania and the Eastern District of Missouri obtained from http://www.uscourts.gov/fcmstat/index.html).

**(j)      The local interest in deciding local controversies at home;**

This matter does not involve a controversy that is local to Pennsylvania.  The parties are incorporated in, and residents of, other states, the facts giving rise to the controversy arose in a different state, and the alleged infringement touches Pennsylvania in only the barest of ways.  By contrast, Missouri has a strong local interest in deciding this controversy.  One of the litigants is based in Missouri and every alleged act of infringement purportedly took place in Missouri.

**(k)      The public policies of the fora;**

The public policies of Missouri in enforcing trademark and patent laws for the benefit of its citizens and local industry are strongly implicated in this case.  In contrast, similar public policies in Pennsylvania are not implicated in this case as it appears that the contacts in connection with this litigation between these litigants and Pennsylvania citizens and industry have been minimal at best.

**(l)      The familiarity of the trial judge with the applicable state law.**

This factor neither favors nor disfavors transfer.  Although Starmark ahs alleged causes of action for unfair competition and tortious interference, they are clearly not rooted to the Eastern District of Pennsylvania and can easily be brought under analogous law in the Eastern District of Missouri.  The sole act complained of—the letter in exhibit C to the complaint—was written in and sent from Missouri.  Judges in both the Eastern District of Missouri and the Eastern District of Pennsylvania handle a large number of cases dealing with patent infringement, false advertising, unfair competition, and tortious interference and are well able to adjudicate this dispute.

**3.      The Convenience of the Parties and Witnesses, and the Interest of Justice, All Dictate that This Case Be Transferred to the Eastern District of Missouri.**

As evidenced in the analysis of the above factors, nine of twelve factors strongly favor a transfer to the Eastern District of Missouri, two of the factors are neutral, and a single factor (Plaintiff's choice of forum) slightly disfavors transfer.

**C. <u>Missouri is Clearly a More Convenient Forum for this Lawsuit.</u>**

Clearly, the selection of the Eastern District of Pennsylvania by Starmark is an exercise in forum shopping.  Starmark's selection was designed to make it as costly and inconvenient for

Creative to defend itself against its meritless accusations.  Permitting this action to remain in the Eastern District of Pennsylvania, a forum that has absolutely no interest in its resolution, would inevitably lead to a waste of resources and energy for this Court and the citizens of Pennsylvania, and to unnecessary expense and inconvenience to the parties involved.  Accordingly, this case should be transferred to the Eastern District of Missouri.

## VIII.   <u>CONCLUSION</u>

Starmark's filing of its Complaint in the Eastern District of Pennsylvania is a clear case of forum shopping.  Starmark knew that Creative had no presence in Pennsylvania and that this venue would be both inconvenient and expensive for Creative to litigate in.  The bases under which this lawsuit should be dismissed or transferred are numerous.  The facts clearly show that there is no personal jurisdiction over Creative in this district and therefore this lawsuit should be dismissed for that reason.  To make matters worse, Starmark, in its rush to sue, failed to secure rights in the patent-in-suit prior to suing Creative and further only became a corporate entity on the day it filed this lawsuit, many months after the events alleged in the complaint took place.  Accordingly, this lawsuit should be dismissed for lack of standing or failure to state of action.  Furthermore, Starmark ignored the statutory requirements for venue and filed in this district when venue here is clearly improper.  Thus, this lawsuit should be dismissed for improper venue.  Finally, even if dismissal were not proper, for the convenience of the parties and in the interests of justice, venue should be transferred to the Eastern District of Missouri.

Date:  October 23, 2007                          Respectfully submitted,


    */s/Robert W. Ashbrook Jr.*              */s/Ury Fischer*

Robert W. Ashbrook Jr.                      Ury Fischer
  Dechert LLP                               Lott & Friedland, P.A.
  Cira Centre, 2929 Arch Street             1 East Broward Blvd., Suite 1609
  Philadelphia, PA  19104                   Fort Lauderdale, FL  33301
  tel. (215) 994-2215                       tel. (305) 448-7089
  fax (215) 994-4000                        fax (305) 446-6191
  robert.ashbrook@dechert.com               ufischer@lfiplaw.com

                          Counsel for Defendant
                            Creative Compounds, LLC

## CERTIFICATE OF SERVICE

I certify that today in

> Starmark Laboratories v. Creative Compounds, LLC,
> E.D. Pa. no. 06-cv-4745

that the following documents have been filed electronically and will be available for viewing and downloading from the Court's Electronic Case Filing (ECF) system:

> [Proposed] Orders
>
> Defendant Creative Compounds, LLC's Motion to Dismiss or Transfer Venue
>
> Defendant Creative Compounds, LLC's Memorandum of Law in Support of Its Motion to Dismiss or Transfer Venue
>
> Exhibits A-D
>
> Declaration of Gary Haynes in Support of Defendant Creative Compounds, LLC's Motion Transfer Venue
>
> Certificate of Service

and that service on the following parties will be accomplished by the electronic service of a Notice of Electronic Case Filing to the following parties, who have consented to electronic service:

> Starmark Laboratories
> c/o Frederick A. Tecce, Esq.
> McShea Tecce, P.C.
> Bell Atlantic Tower, 28th Floor
> 1717 Arch Street
> Philadelphia, PA 19103
> ftecce@mcshea-tecce.com

Date: October 23, 2007                          */s/Robert W. Ashbrook Jr.*
                                                Robert W. Ashbrook Jr.